TO BE PUBLISHED

**Supreme Court of Kentucky**

2016-SC-000490-KB

FINAL

DATE 12/28/16 Kim Redmon, DC

KENTUCKY BAR ASSOCIATION                                                          MOVANT

V.                                IN SUPREME COURT

JOHN ELIAS DUTRA                                                          RESPONDENT

## OPINION AND ORDER

The Board of Governors of the Kentucky Bar Association (KBA) has recommended that John Elias Dutra be found guilty of nine counts of misconduct and be permanently disbarred. This Court agrees and adopts the recommendation.

Dutra was admitted to the practice of law in the Commonwealth of Kentucky on October 9, 2000; his KBA member number is 88405. His bar roster address is 113 North Hamilton Street 1B, Georgetown, Kentucky 40324.

This disciplinary matter arises from three separate KBA Files, Nos. 22848, 23251, and 24093. Dutra's conduct in those cases has not been disputed, this case having proceeded as a default matter before the KBA's Board of Governors.

KBA File No. 22848 relates to Dutra's representation of Glenn Adkins in a Scott County domestic-relations case against Donna Adkins (now Hunter), specifically, in his handling of funds held in escrow. In 2007, Adkins's and

Hunter's farm was sold, and the net proceeds—$154,447.02—were deposited in Dutra's firm's escrow account at Whitaker Bank, as ordered by the court. Between August 2007 and August 2011, checks totaling $8,750 were written on the account, all payable to Dutra, his former law partner, or to Dutra and the partner jointly. Each check included the notation "Adkins fee." Three other checks totaling $5,250 and payable to cash were also written on the account, each with a notation referring to Adkins. Dutra had not been authorized by the trial court to pay attorney's fees from the escrowed money.

In July 2009, the trial court ordered that the escrowed funds be transferred to an interest-bearing account within ten days. On July 16, 2009, Dutra withdrew $100,000 from his escrow account and deposited it in a separate, interest-bearing account. From that point forward, Dutra continued making court-ordered payments from his firm's escrow account and from his general operating account. He would then reimburse those amounts from the second, interest-bearing account.

Donna Hunter became concerned about Dutra's handling of the escrowed money and demanded an accounting. On February 15, 2013, Dutra provided her with a document he claimed was an accounting of the funds. This document stated that $92,603.01 remained from the proceeds of the sale, with the last entry dated December 22, 2009. The document included no account numbers, nor were any bank records attached. And there was no mention of interest generated by the funds.

2

On March 28, 2013, Dutra withdrew $17,470 from the interest-bearing account, even though the trial court had not authorized it. The funds were not paid to Adkins or Hunter. It was later learned that on the same day, Dutra tendered a cashier's check for $17,465 to a successor trustee in another case in which Dutra mishandled funds.[1] The Board's findings suggest that Dutra made the payment out of the Adkins-Hunter funds.

On June 12, 2013, Dutra was ordered to provide the trial court with the balance on the interest-bearing account and to furnish copies of all checks drawn on the account. He was given two weeks to comply, but he failed to do so.

On March 7, 2014, the court ordered that the remaining funds be paid to Hunter, who was to "keep the funds safe and secure and from which she shall be permitted to pay her medical bills, past & present." Dutra was given 30 days to provide the court with an accounting of all disbursements from the account. He did not comply with this order.

On August 13, 2014, the trial court issued a show-cause order, and on September 10, Dutra showed up with another claimed accounting. This document did not include bank names or account numbers where the funds were held, the dates on which funds were withdrawn or the amounts of

_____

[1] That case, *Dutra v. Kentucky Bar Ass'n*, 440 S.W.3d 374, 375 (Ky. 2014), resulted in Dutra being suspended from practice for 181 days, with 120 days probated and only 61 days to be served. Dutra was a trustee of funds for a client, but he was accused of mishandling the funds. A bar complaint was filed, and it turned out that the trust account, which was supposed to have almost $18,000 in it, had just over $200. Dutra and the complainant entered into an agreement under which the bar complaint would be withdrawn and Dutra would transfer his trustee duties to another person. The $17,465 payment was made pursuant to that agreement.

withdrawals, or any reference to interest earned by the account. The document did not include an entry for the $17,470 withdrawal on March 28, 2013. It did, however, state that the account balance "should be" $43,077.04 but noted that the actual balance was $40,764.51, indicating a deficit of $2,312.53. Dutra did not explain the deficit. The court ordered Dutra to tender the remaining balance to the Scott Circuit Clerk, which he did two days later.

Donna Hunter had filed a bar complaint several months earlier (in May 2014) alleging, among other things, that a "large amount of money [wa]s missing." Dutra responded, denying any misuse of the finds and stating, "On July 26, 2009 the proceeds were transferred to a separate interest bearing account, where they have remained ever since."

Bar Counsel requested additional information, including a valid accounting. Dutra initially refused to provide bank records, though he later stated, via counsel, that he would provide redacted records. Bar counsel then requested the records, but not all were provided. For example, the records did not include copies of checks written from the escrow and interest-bearing accounts, nor did they encompass the entire period during which Dutra held the funds. Eventually, bar counsel subpoenaed the bank records and a list of all accounts in which funds were kept. Dutra failed to provide the list of accounts. He also failed to provide any explanation of the March 28, 2013 withdrawal of $17,470, which bar counsel discovered during this period.

A three-count formal charge was issued against Dutra. The charge alleged violations of (1) SCR 3.130-1.15(a), which requires that a lawyer "shall

4

hold property of clients or third parties that is in a lawyer's own possession in connection with a representation separate from the lawyer's own property"; (2) SCR 3.130-3.4(c), which requires that a lawyer "shall not ... knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists"; and (3) SCR 3.130-8.4(c), which states that it is "professional misconduct for a lawyer to ... engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

The charge was served on Dutra personally by the Scott County Sheriff's Office on March 1, 2016. Dutra did not file an answer.

The second case, KBA File No. 23251 arose from Dutra's representation of Tina Romano (formerly Scott), in a divorce action against Mark Scott in 2007. In July 2007, the Scotts' marital residence was sold, and Dutra was to hold the proceeds—$83,500.79—in escrow. Dutra also deposited these funds into his firm's escrow account at Whitaker Bank. During the remainder of 2007 and all of 2008, Dutra's escrow balance was greater than $83,500.79. But on July 16, 2009, the balance fell below $30,000, and on September 10, 2010, the balance was negative.

The Scott Circuit Court did not order or otherwise authorize the distribution of the Scotts' funds, nor did either party receive any of the funds. On August 7, 2012, Whitaker Bank closed the escrow account and wrote off the negative $483.62 balance.

On October 14, 2014, the Scott Circuit Court ordered Dutra to transfer the funds, with interest, to Romano's counsel. Shortly thereafter, her counsel

5

received a check for $83,035.24 written on an account for the law office of Dutra's former partner. In investigating the source of these funds, bar counsel discovered that $40,000 was contributed by the former partner from a personal loan and funds he earned in personal injury work, and that the remainder was supplied by a cashier's check from the Miami University Community Credit Unit payable to Dutra. There is no indication that the money provided by Dutra was maintained in an escrow account, nor can it be directly linked to the joint escrow account that was closed in 2012.

Tina Romano filed a bar complaint in October 2014, stating that she believed Dutra may have misappropriated funds he had held for her and her ex-husband. Dutra was served with the complaint, and his counsel eventually responded, stating that "all funds to which she [Romano] was entitled pursuant to the divorce have been paid to [her]."

Another three-count charge was issued against Dutra. Like the one related to the Hunter complaint, this one alleged that Dutra violated SCR 3.130-1.15(a), SCR 3.130-3.4(c), and SCR 3.130-8.4(c). Although service of the charge on Dutra was unsuccessful, a courtesy copy was sent to his counsel, who moved for an extension of time to file an answer, which was granted. Still, no answer was filed, and eventually, Dutra's counsel moved to withdraw. This motion was granted, and Dutra was given 45 days to retain counsel and file his answer. He did not file an answer, nor did new counsel enter an appearance on his behalf.

The third case, KBA File No. 24093, arose from Dutra's representation of Jeffrey Butler in a criminal matter, which began in March 2013. Butler paid $1,000 up front, and made several additional payments over time, for a total of $2,050 by January 2014. As noted above, Dutra was suspended by this Court in August 2014. Nonetheless, he collected a payment from Butler for $150 in October 2014. And despite being suspended, he did not withdraw from Butler's case.

Butler filed a bar complaint in November 2015 alleging that Dutra "left him hanging," and stating that he felt he was entitled to a partial refund of the fee he paid. Dutra was served with the complaint, along with a letter stating that the Inquiry Commission needed additional information about the complaint. Dutra did not file a response.

A three-count charge was issued with respect to this case in April 2016. It alleged that Dutra (1) violated SCR 3.130-1.16(d), which requires an attorney to take steps to protect the client and to return unearned fees upon termination of the representation; (2) SCR 3.130-8.1(b), which states that an attorney shall not "knowingly fail to respond to a lawful demand for information from a[] ... disciplinary authority"; and (3) SCR 3.130-8.4(c), which states it is misconduct for a lawyer to engage in "dishonesty, fraud, deceit or misrepresentation."

A copy of the charge was mailed to Dutra, who personally signed for it. No answer was filed.

Because Dutra never filed answers to the charges in these three cases, this matter was submitted to the Board of Governors as a default case under SCR 3.210.

The Board voted unanimously, 16–0 (with one recusal, and three absent), to find Dutra guilty of all counts. After this vote, the Board considered Dutra's history of discipline, which consists of two cases. The first resulted in the 181-day suspension with 120 days probated. *See Dutra v. Kentucky Bar Ass'n*, 440 S.W.3d 374, 375 (Ky. 2014). Part of the Board's consideration was the apparent connection between Dutra's conduct in that case and his conduct in this case, specifically, the use of funds from a client in this case to pay to a client's trustee in the earlier one.

Dutra's suspension in this case was set to automatically expire in October 2014. He had failed to meet his CLE requirements and, at that time, had several new pending disciplinary complaints. As a result, bar counsel objected to his reinstatement under SCR 3.510(2), and that objection was not withdrawn, requiring Dutra to seek review by the Character and Fitness Committee. Dutra is still suspended.

The Board also considered a more recent disciplinary matter, KBA File No. 23689, which it had decided in May 2016 and was decided by this Court in October 2016. *See Kentucky Bar Ass'n v. Dutra*, 2016-SC-000386-KB, ___ S.W.3d ___, 2016 WL 6125909 (Ky. Oct. 20, 2016). That case dealt with Dutra's failure to refund a retainer when the client decided not to proceed in a divorce case. Dutra was suspended for 30 days to be served consecutively to his earlier

8

suspension, probated for a year on the condition that he refund the client's money.

The Board then considered the appropriate sanction and voted 16–0 to recommend permanent disbarment.

At this point neither the KBA's Office of Bar Counsel nor Dutra has sought review by the Court under SCR 3.370(7). Furthermore, this Court declines to undertake review pursuant to SCR 3.370(8), meaning that the Board's recommendation is adopted pursuant to SCR 3.370(9).

**Order**

ACCORDINGLY, IT IS ORDERED THAT:

1.    The Respondent, John Elias Dutra, is found guilty of all the counts described above and is permanently disbarred in the Commonwealth of Kentucky.

2.    As stated in SCR 3.390(a), this order shall take effect on the tenth day following its entry. Dutra is instructed to promptly take all reasonable steps to protect the interests of his clients. He shall not accept new clients or collect unearned fees and shall comply with the provisions of SCR 3.130-7.50(5).

3.    As required by SCR 3.390, Dutra must, within 10 days after the issuance of this order of disbarment, notify by letter duly placed with the United States Postal Service all courts or other tribunals in which he has matters pending, and all of his clients of his inability to represent them and of the necessity and urgency of promptly retaining new

9

counsel. Dutra shall simultaneously provide a copy of all such letters of notification to the Office of Bar Counsel. He shall immediately cancel any pending advertisements, to the extent possible, and shall terminate any advertising activity for the duration of the term of suspension.

4. In accordance with SCR 3.450, Dutra is directed to pay the costs associated with these disciplinary proceedings against him, which total $1,431.92, for which execution may issue from this Court upon finality of this Opinion and Order.

All sitting. All concur.

ENTERED: December 15, 2016.

_____
CHIEF JUSTICE

10